**Guy T. GOSS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–328.

United States Court of Veterans Appeals.

April 23, 1996.

Harry L. Miles, Northampton, MA, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and John D. McNamee, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

NEBEKER, Chief Judge:

The appellant, Guy T. Goss, appeals a Januar 11, 1994, Board of Veterans' Appeals (Board or BVA) decision that he was not entitled to service connection for diabetes mellitus (DM) with associated polyneuropathy and residuals of frostbite. The appellant does not appeal the Board's denial of service connection for several other conditions, and those claims are deemed abandoned. *See Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993). After consideration of the record and supplemental record on appeal, the briefs of the parties, and the reply brief of the appellant, the Court will vacate the Board's decision regarding the appellant's claims for service connection for residuals of frostbite, polyneuropathy, and DM, and will remand those matters for the reasons below.

## I. FACTS

The appellant served on active duty from November 1943 to December 1945, and is a veteran of several battles and campaigns in the European theater. Record (R.) at 25. He was a German prisoner of war (POW) from December 1944 to April 1945. R. at 61. His service medical records are negative with regard to any of the claims on appeal here.

On a report of medical examination in October 1982 for disability evaluation for an injury not at issue here, the appellant stated

that he had recently been diagnosed as a diabetic. R. at 50. That VA examination was limited to the appellant's right shoulder and back. R. at 50–53. At a POW protocol examination in August 1987, the examiner noted his impression of "Pre-proliferative diabetic retinopathy. ( [Patient] does not give a history of diabetes.[) ]" R. at 86. Also, as part of that examination, the examiner noted his impression that the appellant had a history of frostbite of his feet, but no residuals. R. at 83–84. An electromyogram (EMG) conducted because of neck pain and complaints of numbness in the appellant's right arm revealed "sensory polyneuropathy bilateral." R. at 96. In April 1988, the appellant filed a claim for service connection for, among other things, diabetes (which he stated had begun in 1987) and a bilateral foot condition. R. at 112, 114. In May 1988, the examiners noted an impression of "[d]istal mild polyneuropathy, the proximal EMG abnormalities are probably due to to [sic] amyotrophy—all in the basis of the diabetes mellitus." R. at 132. (Amyotrophy is defined as "atrophy of a muscle." WEBSTER'S MEDICAL DESK DICTIONARY, 30 (1986).) A VA regional office (RO) rating decision in February 1989 stated that service connection remained denied for DM and distal mild polyneuropathy resulting from diabetes, and stated, "History of Frostbite (not found last exam)." R. at 142–43.

The appellant submitted a Notice of Disagreement to that RO decision. R. at 145. At a personal hearing in January 1990, the appellant testified under oath that he had suffered frostbite of his hands and feet while a prisoner of war, and that he still suffered numbness and burning sensations. R. at 163–64, 166, 172–74; see also R. at 186. Mrs. Sharon McGrath also testified, stating that she had known the appellant for forty years and that she is a nurse. R. at 182, 183. She testified, "[The appellant] did have frostbite of the feet and the hands. OK. That's going to produce that numbness and tingling. That's why he has to put those feet in cold water." R. at 186. In February 1990, he submitted letters from his wife and daughter. R. at 203–08. His daughter stated that she remembered her father complaining of burning, itching, and peeling of his feet long before he was diagnosed as a diabetic in 1987. R. at 196. The appellant also submitted a February 1990 letter from Mrs. McGrath identifying herself as a registered nurse and stating that she had known the appellant for forty years and had seen him in a professional counseling capacity. R. at 210. She stated that the appellant had weighed 90 pounds when he was discharged from the military, and had suffered from an "inadequate diet," malnutrition, and vitamin deficiencies during his captivity. R. at 209; see also R. at 183. She opined that his multiple medical problems, including diabetes and frostbite, "can be caused by vitamin deprivation, malnutrition, physical beatings, etc.[,] suffered by Mr. Goss at Garlitz POW Camp." R. at 210.

A September 1991 BVA decision remanded, among other things, the appellant's claims for service connection for DM and residuals of frostbite because the Statements of the Case had not given a correct account of the appellate history. R. at 259. The Board stated that the November 1987 decision regarding DM and residuals of frostbite "is not final, and remains open" and that the issues should therefore be afforded de novo review. R. at 260. Subsequently, the RO issued a rating decision in October 1991 denying service connection for DM and residuals of frostbite. R. at 263. In January 1992, the appellant submitted a Notice of Disagreement as to that RO decision. R. at 270. An August 1992 BVA decision noted that in the September 1991 Board remand, "the issue of service connection for polyneuropathy was inadvertently left off the title page." R. at 276. The Board stated that additional evidentiary development was required with regard to neuropathy of the upper extremities, and remanded for an examination by a VA neurologist "in order to determine the nature and etiology of polyneuropathy." R. at 277. The Board held the other issues pending RO action on the polyneuropathy claim. Ibid. An October 1992 neurological compensation and pension examination report from a VA physician stated the following: "CLINICAL ASSESSMENT: Mild to moderate peripheral neuropathy, probably diabetes, diabetic induced, although could not

rule out nutrition deficiency as a prisoner of war. Mild to moderately disabled in this regard." Supplemental (Suppl.) R. at 2. Following that examination, the RO denied the appellant's claim for service connection for polyneuropathy. R. at 286. The BVA decision now on appeal followed.

## II. ANALYSIS

On appeal, the appellant argues that the Court should: (1) vacate the BVA decision denying service connection for residuals of frostbite and remand that matter because the Board assumed that the symptoms put forth as residuals of frostbite were caused by DM, and the appellant was not given notice that his frostbite claim would be considered as part of his DM claim; (2) reverse the BVA's decision denying the appellant's claim for service connection for polyneuropathy with regard to his upper body, or, in the alternative, vacate the BVA decision and remand that matter for further consideration; and (3) vacate the BVA's decision denying service connection for DM and remand the matter for further consideration because the Board failed to consider whether his DM might be secondary to asserted malnutrition suffered as a POW. The Secretary argues the following: (1) the decision regarding the denial of service connection for residuals of frostbite should either be vacated or affirmed depending on the outcome of *Edenfield v. Brown*, 8 Vet.App. 384 (1995) (en banc), because that claim is not well grounded; (2) the Board's decision regarding polyneuropathy should be vacated and the issue remanded because the BVA failed to address it as a separate claim from the appellant's claim for service connection for DM, the post-remand examination did not fully comply with the remand instructions, and the Board should consider the application of the benefit-of-the-doubt argument; and (3) the BVA's decision regarding the appellant's claim for service connection for DM should be affirmed since it is not clearly erroneous.

Two special adjudication provisions favor the appellant, as a POW and a combat veteran, in his application for service connection. Section 1154(b) of title 38 of the U.S.Code provides in pertinent part that, where a veteran has served in combat with the enemy during a period of war,

... the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary.

This statutory provision is implemented at 38 C.F.R. § 3.304(d) (1995). *See Caluza v. Brown*, 7 Vet.App. 498 (1995).

Section 1112 of title 38 of the U.S.Code provides that a veteran who was a prisoner of war for at least thirty days will be service connected for a variety of diseases including "organic residuals of frostbite, if the Secretary determines that the veteran was interned in climatic conditions consistent with the occurrence of frostbite," and "peripheral neuropathy except where directly related to infectious causes," which become manifest to a degree of 10% or more after active service, even though there is no record of such disease during service. 38 U.S.C. § 1112(b); *see also* 38 C.F.R. § 3.309(c) (1995). This presumption of service connection is rebutted

[w]here there is affirmative evidence to the contrary, or evidence to establish that an intercurrent injury or disease which is a recognized cause of any of the diseases within the purview of section 1112 ... of this title, has been suffered between the date of separation from service and the onset of any such diseases, or disabilities, or the disability is due to the veteran's own willful misconduct....

38 U.S.C. § 1113(a); *see also* 38 C.F.R. § 3.307(d) (1995).

### A. Claim for service connection for residuals of frostbite

 The appellant alleges that he suffered from frostbite as a POW and while he

was on the Russian front. A prerequisite for any claim for benefits is that it be well grounded, i.e., that there be sufficient evidence to justify a belief by a fair and impartial individual that the claim is plausible. 38 U.S.C. § 5107(a); *Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992). Whether or not a claim is well grounded is a question of law which this Court reviews de novo. *Grottveit v. Brown*, 5 Vet.App. 91, 92 (1993); *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). Given the appellant's statements and testimony, his daughter's statement that she had observed the appellant suffering itching, burning, and peeling of his feet well before he was diagnosed with DM, the presumption provided by § 1112(b)(11), and nurse McGrath's statement that "[the appellant] did have frostbite of the feet and the hands [which is] going to produce that numbness and tingling," the Court holds that the appellant's claim is well grounded. *See Dixon v. Derwinski*, 3 Vet.App. 261, 263 (1992) (non-POW veteran whose service medical records were destroyed had well-grounded claim for residuals of frostbite because he had private physician's report lending credence to his contention and had offered detailed statements regarding circumstances, dates, and location of incurrence of frostbite). For the reasons stated in part II.C., below, as to the DM claim, the nurse's statement is sufficient to well ground the frostbite claim.

The Board stated in the section of its decision entitled "VII. Frostbite,"

Although the veteran claims to have residuals of frostbite, none were found on the prisoner-of-war examination in 1987, nor has any medical examiner found residuals of frostbite. His currently diagnosed polyneuropathy has not been attributed to frostbite, but rather to an intercurrent diabetes mellitus. Except for the assessment on the VA examination in 1992, that nutritional deficiency could not be ruled out as the cause of the veteran's neuropathy, all other examiners attributed his neuropathy to diabetes and even the examiner in 1992 noted that neuropathy was *probably* due to diabetes. The preponderance of the evidence shows diabetic neuropathy and we conclude that the veteran's peripheral neuropathy is due to intercurrent diabetes and

not to frostbite or any other [POW] experience.

R. at 14.

█ By statute, the Board is required to include in every decision "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). The Board's reasons here are inadequate for its conclusion that the appellant is not service connected for residuals of frostbite; in fact, it is not even clear to this Court whether the Board is denying service connection for residuals of frostbite or for polyneuropathy in this section of the Board's decision. Remand is, therefore, required. *See Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).

Remand is also required because of the Board's failure to address the appellant's testimony, the nurse's testimony, and his daughter's statement. This is not a case like the one presented in *Burger v. Brown*, 5 Vet. App. 340 (1993), wherein this Court held that VA had clear and convincing evidence to defeat the presumption of service connection where the veteran had testified that he no longer had tingling in his feet. In the instant case, the appellant has testified that he still suffers from burning sensations and numbness in his feet and hands, and he has submitted a letter from his daughter stating she can remember her father complaining of burning, itching, and peeling feet before he was diagnosed with diabetes. The BVA may not ignore a veteran's sworn testimony simply because he is an interested party; it must account for and explain its reasons for rejecting the testimony. *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169–70 (1991). Similarly, the BVA must address the appellant's daughter's statement. *See Ohland v. Derwinski*, 1 Vet.App. 147, 149 (1991). "Should the BVA determine that the evidence is not credible, it will have to provide sufficient reasons or bases for discrediting it." *Martin v. Derwinski*, 1 Vet.App. 411, 413 (1991) (citation omitted).

Furthermore, the appellant testified that a VA doctor had told him that the tingling he

feels in his feet may be due to "frosted feet." R. at 189. VA regulations require that VA personnel conducting a hearing suggest that the claimant submit evidence which he may have overlooked but which would be advantageous to him. 38 C.F.R. § 3.103(c)(2) (1995); *Douglas v. Derwinski,* 2 Vet.App. 435, 440–42 (1992) (en banc); *Proscelle v. Derwinski,* 2 Vet.App. 629, 632–33 (1992). VA failed in this duty.

### B. Claim for service connection for polyneuropathy

■ The Secretary argues in his brief that remand is appropriate with regard to the appellant's claim for service connection for polyneuropathy (both upper and lower extremities) because the BVA had failed to address it as a claim separate from his claim for service connection for DM, because the post-remand examination did not fully comply with the remand instructions, and because the Board should consider the application of the benefit-of-the-doubt argument. The appellant argues that reversal, not remand, is the appropriate remedy. We agree with the Secretary that remand on this issue is required.

VA regulations provide that where "diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1995); *see* 38 C.F.R. § 19.9 (1995). Where the Board makes a decision based on an examination report which does not contain sufficient detail, remand is required "for compliance with the duty to assist by conducting a 'thorough and contemporaneous medical examination.'" *Stanton v. Brown,* 5 Vet.App. 563, 569 (1993). Here, in the 1992 VA examination report prepared pursuant to remand from the Board, the examiner stated that he "*could not rule out* nutrition deficiency as a prisoner of war" as the cause of the appellant's mild to moderate peripheral neuropathy. *See* Suppl. R. at 2 (emphasis added). Such an equivocal statement does not support the BVA's finding that the appellant's polyneuropathy was not service connected, and remand is required. *Cf. Smith v. Brown,* 7 Vet.App. 255, 258 (1994) (where the doctor's statement at issue is "too thin a reed on th[e] record to compel reversal," a remand will permit "amplification and development of the [ ] claim, including the resolution of any inconsistencies, and will lead to an adjudication premised upon findings of fact and conclusions of law accompanied by a statement of reasons or bases which would, if necessary, permit effective judicial review").

Moreover, there has been no examination regarding the etiology of the polyneuropathy in the upper extremities, and remand is required for this reason as well. On remand, the BVA must consider the appellant's claim for service connection for polyneuropathy (both upper and lower extremities) as a condition separate from his DM to see if the POW presumption is triggered for polyneuropathy. The Court notes that polyneuropathy "except where directly related to infectious causes" is entitled to the presumption. 38 U.S.C. § 1112(b)(13). If the BVA determines that there is not sufficient medical evidence, or the complexity of the medical evidence requires it, "it should seek an independent medical expert opinion, so that the evaluation of the disability will be a fully informed one." *Magana v. Brown,* 7 Vet. App. 224, 228 (1994); *see also* 38 U.S.C. § 7109, 38 C.F.R. § 20.901(a), (d) (1995).

### C. Claim for service connection for DM

■ Once a claimant has presented a well-grounded claim for service connection, VA has a duty to assist the claimant, i.e., to help develop the facts pertinent to his claim. 38 U.S.C. § 5107(a); *see* 38 C.F.R. § 3.103(a) (1995); *Ardison v. Brown,* 6 Vet.App. 405, 407 (1994); *Waddell v. Brown,* 5 Vet.App. 454, 456 (1993); *Murphy v. Derwinski,* 1 Vet.App. 78, 81–82 (1990). Here, the appellant has submitted nurse McGrath's statement that his diabetes could have been caused by "vitamin deprivation, malnutrition, physical beatings, etc.[,] suffered by Mr. Goss at Garlitz POW Camp." R. at 210. She also noted that he had weighed 90 pounds at his release from military service and that he had suffered an inadequate diet, malnutrition, and vitamin deficiencies in service. A nurse's statement, like a doctor's statement, regarding the possibility of diabetes resulting

from his treatment as a POW is sufficient to make the appellant's claim well grounded. *See Williams (Willie) v. Brown,* 4 Vet.App. 270, 273 (1993) ("[n]owhere is it provided in law or regulation that opinions by the examining psychiatrists are inherently more persuasive than that of other competent mental health professionals," there including a registered nurse); *Espiritu v. Derwinski,* 2 Vet. App. 492, 494 (1992); *cf. Jenkins v. United States,* 307 F.2d 637, 644 (D.C.Cir.1962) (to qualify as an expert, a person need not be licensed to practice medicine, but just have " 'special knowledge and skill in diagnosing and treating human ailments' " (citation omitted)). Thus, the appellant has submitted a well-grounded claim regarding his diabetes and VA's duty to assist was manifest. As this Court has already discussed, the duty to assist may include "the conduct of a thorough and contemporaneous medical examination...." *Green v. Derwinski,* 1 Vet.App. 121, 124 (1991); *see also Stanton, supra.* Here, although the appellant has been examined by VA doctors, none has addressed the possibility of a nexus between DM and malnutrition. Remand is, thus, required on this issue as well.

### III. CONCLUSION

Accordingly, the Board's decision regarding the appellant's claims for service connection for residuals of frostbite, polyneuropathy, and DM is VACATED and the matters are REMANDED for further adjudication in accordance with this opinion. The appellant's request for oral argument is denied because the Court does not believe it would materially assist in disposition of this appeal.