**Clemment B. EPPS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–438.

United States Court of Veterans Appeals.

Argued June 13, 1996.

Decided Aug. 27, 1996.

Michael P. Horan, for appellant.

Adam K. Llewellyn, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, Washington, DC, were on the brief, for appellee.

Before FARLEY, IVERS, and STEINBERG, Judges.

FARLEY, Judge, filed the opinion for the Court. STEINBERG, Judge, filed a concurring opinion.

FARLEY, Judge:

This is an appeal from a January 27, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which (1) denied entitlement to an increased rating for a skin condition rated at 30%, and (2) denied service connection for a heart condition secondary to the skin condition. The appellant has limited his appeal to two issues, both of which pertain only to his claim for service connection for a heart condition. First, he challenges the validity of the VA hearing officer (HO) program and the particular hearing he was afforded. Second, he argues that VA breached a duty imposed by 38 U.S.C. § 5103(a) to assist claimants in the filing of claims for benefits. *See Robinette v. Brown,* 8 Vet.App. 69 (1995). The appellant's appeal as to the claim for an increased rating for his service-connected skin condition is deemed abandoned. *See Bucklinger v. Brown,* 5 Vet.App.

435 (1993). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the January 27, 1993, decision of the BVA.

## I. BACKGROUND

The appellant served on active duty in the United States Army from March 1961 until March 1964. Record (R.) at 17. On March 20, 1969, he was awarded service connection for dermatitis of the hands and feet and was assigned a 10% disability rating effective November 27, 1968. R. at 25. The VA regional office (RO) declined to increase that rating in 1977 (R. at 44) and 1985 (R. at 66).

The appellant again sought an increased disability rating for his service-connected skin condition in June 1991. R. at 70–86. In a statement in support of this claim, the appellant opined that his skin condition had caused a heart murmur. R. at 81. Specifically, he stated: "I believe whatever I have causes the blood clots, open sores and swelling of my feet[,] and that the blood clots are the cause of my heart murmur." *Ibid.* On November 7, 1991, the RO denied the appellant's claim for an increased rating for his service-connected dermatitis and denied service connection for "[a]ny heart condition." R. at 116–17.

The appellant filed a Notice of Disagreement (NOD) in December 1991. R. at 119. Shortly thereafter, he filed a VA Form 1–9, Appeal to BVA, on which he had marked assent in the block that stated, "I will appear personally before VA field personnel acting as agents of BVA board members. The field personnel will not decide my appeal unless, in their review of the case, they are able to grant the benefits sought." R. at 128.

A hearing was conducted by an individual hearing officer at the RO on February 20, 1992. R. at 133–51. The hearing officer initially refused to elicit testimony on issues other than the appellant's skin condition claim. R. at 137, 141. Subsequently, however, during the course of the hearing he permitted the appellant to offer testimony regarding his claimed heart condition. R. at 141–43. The appellant testified, inter alia,

that: he was exposed to chemical weapons in service that caused his skin to blister and bubble and have caused him to be "plagued with health problems" since service (R. at 135); after service his skin would break out because of blood clots in his legs (R. at 137); one of the blood clots "went through" and "caused the damage" to his heart (R. at 140); and his service-connected skin condition was caused by a bacterial infection (R. at 141). At the conclusion of the testimony, the appellant's representative requested that the hearing officer consider the increase in severity of the appellant's service-connected skin condition and "adjunct health conditions that [the appellant] attributes to his period of service." R. at 150.

On March 19, 1992, the appellant underwent a physical examination. R. at 153–66. The examining physician reported that the appellant had a heart murmur, but that there was no evidence of skin abnormalities or blood clots. R. at 161. Shortly thereafter, the hearing officer issued a decision (1) granting an increase in the rating for the appellant's service-connected dermatitis from 10% to 30% based upon repeated outpatient treatment for that condition and (2) confirming the denial of entitlement to service connection for a heart condition. R. at 212–15. This decision stated in relevant part:

> The veteran has argued that as a result of his [service-connected] skin disorder he has developed thrombophlebitis which in turn[,] as the result of a transient blood clot[,] has caused his ejection heart murmur initially discovered in 1990. However, there has been no medical evidence presented to support these conjectures. It is clear from the veteran's written and oral statements that he believes the dermatofibroma on his left leg to be indicative of "knots" or thrombus in his veins. However, a dermatofibroma ... does not invovle [sic] any aspect of the cardiovascular system and therefore to attribute this condition to the developement [sic] of a systolic injection murmur is simply not plausable [sic]. Therefore, there is no basis from which a favorable finding on this aspect of the veteran's appeal can be rendered.

R. at 214–15. Nearly identical language is contained in the May 26, 1992, rating decision effectuating the hearing officer's determination (R. at 218), and in a June 11, 1992, letter to the appellant from the adjudication officer (R. at 226).

The BVA issued the decision on appeal on January 27, 1993. R. at 4–12. The BVA determined that the claims for an increase in the rating for the appellant's service-connected skin disorder and for service connection for a heart condition were both well grounded. R. at 6. However, the BVA ultimately denied an increase in rating above 30% for the appellant's skin disorder and, after finding that a heart disorder was not present in service or shown to be causally related or the result of the appellant's service-connected skin disorder, denied entitlement to service connection for a heart condition. *Id.*

The appellant, through counsel, raises two arguments on appeal. First, he argues that VA failed to inform him of the type of evidence needed in order to render his heart condition claim well grounded. Second, he argues that the February 1992 hearing was procedurally and substantively invalid and that he was denied a meaningful personal hearing. R. 9–15. As a result of these deficiencies, the appellant argues, the BVA decision must be vacated.

## II. ANALYSIS

### A. Heart Disorder Claim

Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [§ 5107(a) ]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). For a claim to be well grounded, there must be (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of inservice occurrence or aggrava-

tion of a disease or injury; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd*, 78 F.3d 604 (Fed.Cir.1996) (table). Where the determinative issue involves medical causation, competent medical evidence to the effect that the claim is " 'plausible' " is required. *See Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993). The determination of whether a claim is well grounded is a matter of law which this Court reviews de novo. *Caluza*, 7 Vet.App. at 505.

Here, the record is devoid of competent medical evidence of causation. Although the appellant offered his opinion that he suffers from blood clots, that blood clots were caused by his skin condition, and that such clots caused a heart condition, he is not, as a layperson, competent to offer a medical opinion as to the cause of his heart murmur. *See Grivois v. Brown*, 6 Vet.App. 136, 139 (1994); *Grottveit*, 5 Vet.App. at 93; *Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992).

■ The absence of competent medical evidence establishing a nexus between service or the appellant's service-connected skin condition and his heart condition renders his claim for entitlement to service connection for a heart condition not well grounded. Thus, the BVA erred in proceeding to the merits of this claim. Nonetheless, this error is not prejudicial to the appellant, and the Court will affirm the decision of the BVA with respect to this claim. *See Edenfield v. Brown*, 8 Vet.App. 384, 390–91 (1995) (en banc).

### B. Assistance in Developing a Well–Grounded Claim

■ The appellant, who conceded at oral argument that his heart disorder claim is not well grounded, argues that the BVA decision with respect to that issue should nonetheless be vacated because VA failed to give him information regarding the type of evidence needed to render his claim well grounded. The appellant relies on *Robinette*, 8 Vet.App. at 69, for this proposition.

This argument fails for two reasons. First, any argument that the appellant was not notified of what type of evidence he needed to well ground his claim can be rejected on its face in light of the hearing officer's decision, the May 1992 rating decision, and the June 1992 letter, all of which clearly and unequivocally informed the appellant that his claim that his heart disorder claim was denied because there had been no medical evidence presented to support his conjectures. R. at 214–15, 218, 226. These documents reiterated the appellant's opinion that, inter alia, his service-connected skin condition caused him to "develop thrombophlebitis which in turn[,] as the result of a transient blood clot[,] caused his ejection heart murmur," and informed the appellant of the type of evidence that would support his claim. *Ibid.*

Second, even assuming that the appellant had not been informed that medical evidence was required to well ground his claim, *Robinette* does not compel the result the appellant seeks. The *Robinette* opinion held that 38 U.S.C. § 5103(a) imposes an obligation upon the Secretary to notify an individual of what is necessary to complete the application in the limited circumstances where there is an incomplete application which references other known and existing evidence. *Robinette*, 8 Vet.App. at 80. In *Robinette*, which stated that the §·5103(a) duty must be based on the facts of each case, VA was put on notice of a physician's statement that a disability was "most probably" related to service by a statement of the veteran in a letter to VA. *Id.* at 78–80. In this case, however, the appellant's application was not incomplete and VA was not on notice of the existence of any evidence which would have made the claim plausible. The Court recently declined to extend the holding of *Robinette* under similar circumstances. *See Beausoleil v. Brown*, 8 Vet. App. 459, 465 (1996).

Also unavailing is the appellant's argument that *Goss v. Brown*, 9 Vet.App. 109 (1996), imposes an obligation on VA to "suggest that the claimant submit evidence which he may have overlooked but which would be advantageous to him." *Id.* at 114. Unlike the appellant here, the claimant in *Goss* had submitted a well-grounded claim. Further, in *Goss* there was an indication that there was rele-

vant evidence that had not been submitted. Similarly distinguishable are other cases relied upon by the appellant, including *Goldman v. Brown*, 9 Vet.App. 20 (1996) (Secretary conceded that 38 U.S.C. § 5107 duty to assist not satisfied) and *Hicks v. Brown*, 8 Vet.App. 417 (1995) (inadequate examination), which concern well-grounded claims.

In summary, the Court concludes that neither *Robinette, Goss,* nor any other case cited by the appellant imposes a duty upon the Secretary, under the facts of this case, to assist a veteran under 38 U.S.C. § 5107(a) in developing a well-grounded claim. Accordingly, the Court declines the appellant's invitation to vacate the BVA decision with respect to that claim.

### C. The Hearing Officer Program

The HO program was implemented by the acting Chief Benefits Director (CBD) via VETERANS BENEFITS ADMINISTRATION CIRCULAR 20–89–11 (Revised) (March 26, 1990) (hereinafter, "CIRCULAR"), and its predecessor, CIRCULAR 20–88–11 (June 17, 1988). The CIRCULAR empowers a single HO, "under the direct supervisory control" of a regional adjudication officer (AO), to hold "post-decisional" personal hearings on VA benefits issues. CIRCULAR at ¶¶ 2.1(1), 4. Although the CIRCULAR gives the HO the authority to "amend, reverse or affirm" a decision of the AO, if, in the opinion of the HO, the decision must be "changed," i.e., amended or reversed, the HO must make a recommendation to the AO. CIRCULAR at ¶¶ 2.b, 2.c. If the AO does not agree with the HO, the HO must affirm the AO's initial determination. *Ibid.*

█ The appellant argues that the HO program is procedurally and substantively invalid because the CIRCULAR: (1) was promulgated by the acting CBD without authority; (2) was not published in the Federal Register or subject to a notice and comment period; (3) contemplates that hearings may be presided over by a single HO rather than by multiple panel members; and (4) does not provide clear guidelines or instructions concerning the HO's authority. The appellant further argues that, with respect to his particular hearing, he was impermissibly precluded from testifying about his heart condition. The Secretary argues in response that

the overall validity of the HO program as it applies to the appellant is moot because the appellant's heart condition claim is not well grounded, the issue of the validity of the HO program was not raised below, and, in any event, the appellant was permitted to testify about his heart condition.

As an initial matter, the Court notes that there is considerable confusion with respect to the role that the HO played in this case. The fact that the HO's May 20, 1992, decision was effectuated by a May 1992 rating decision suggests that the HO in this case acted for the regional AO. See R. at 217. Nevertheless, it appears that the February 1992 hearing is more properly construed as an appellate-level hearing. The appellant filed an NOD in December 1991; therefore, his claim was in appellate status in January 1992, when he filed the VA Form 1–9 requesting a hearing before "field personnel" acting as agents of the BVA. *See Hamilton v. Brown*, 4 Vet.App. 528 (1993) (en banc), *aff'd,* 39 F.3d 1574 (1994); *see also Strott v. Derwinski*, 964 F.2d 1124, 1128 (Fed.Cir. 1992) ("It is clear from the regulations that [the post–1–9 Appeal] hearing is part of the appellate process, even when it occurs before personnel in the field office"). Although the Secretary argues as a general matter that any issues concerning the hearing afforded the appellant were not raised before the BVA and are therefore not properly before the Court, this Court has demonstrated that it can and will address issues of procedural errors of the BVA, even if not raised at the BVA level. *See, e.g., Austin v. Brown*, 6 Vet.App. 547 (1994); *Thurber v. Brown*, 5 Vet.App. 119 (1993); *see also* 38 U.S.C. § 7261(a)(1) (Court has jurisdiction to decide all relevant questions of law). The appellant's argument that the HO program is invalidated by VA's failure to publish the provisions of the CIRCULAR in the Federal Register pursuant to 5 U.S.C. § 552 and 38 C.F.R. § 1.551 (1995), or to provide an opportunity to comment on proposed regulations pursuant to 38 C.F.R. § 1.12 (1995), turns on the issue of whether the CIRCULAR imposed a substantive rule. (Although 38 C.F.R. § 1.551 has since been repealed (*see* 61 Fed.Reg. 11309 (Mar. 20, 1996)) and the

repeal of 38 C.F.R. § 1.12 is pending (*see* 61 Fed.Reg. 33850 (July 1, 1996)), the publication and notice and comment provisions of 5 U.S.C. §§ 552 and 553 are applicable to VA rulemaking pursuant to 38 U.S.C. § 501.) In *Fugere v. Derwinski,* 1 Vet.App. 103 (1990), the Court held that compliance with the publication and notice and comment provisions is required before the implementation of substantive rules, or those having the " 'force of law' " and which " 'narrowly limit administrative action.' " *Id.* at 107 (quoting *Carter v. Cleland,* 643 F.2d 1, 8 (D.C.Cir. 1980), and *Guardian Federal Savings & Loan Ass'n v. FSLIC,* 589 F.2d 658, 666–67 (D.C.Cir.1978)). Interpretive rules, or rules that " 'merely clarif[y] or explain[ ] an existing rule or statute,' " do not require such compliance. *Ibid.*

It would appear that the CIRCULAR did not warrant publication and a notice and comment period because the HO program does not "narrowly limit" administrative action or have the "force of law." To the contrary, the HO program broadens administrative action by affording claimants an additional opportunity to be heard. Further, implementation of the HO program is merely an extension of the CBD's authority, under 38 C.F.R. § 2.6(b)(1) (1995), to authorize supervisory or adjudicative personnel "to perform such functions as may be assigned," and, under 38 C.F.R. § 3.100 (1995), to make findings and decisions on applications for benefits. Nor would the HO program be rendered invalid because it contemplates a hearing conducted by a single HO. In this regard, the appellant argues that the CIRCULAR is inconsistent with 38 U.S.C. § 7102(a)(1) (1991), which conferred the authority upon the BVA Chairman to subdivide the BVA into sections composed of three members, and with other rules and regulations that contemplate hearings presided over by "personnel" (*see, e.g.,* 38 C.F.R. § 19.160(c) (1991); 38 C.F.R. § 3.103(c) (1991); 38 C.F.R. § 19.168(b) (1991)). As the Secretary points out, the version of 38 U.S.C. § 7102 relied upon by the appellant also provided that "hearings shall be held by *such member* or members as the Chairman may designate." 38 U.S.C. § 7102(b) (1991) (emphasis added). The current version of § 7102(a) provides that Board proceedings may be presided over by "an individual member of the Board or ... a panel of not less than three members of the Board." 38 U.S.C. § 7102. The Court has recently held that the language of the former § 7102(a)(1) allowed appellate-level hearings to be presided over by one hearing officer. *Arnesen v. Brown,* 8 Vet.App. 432, 441 (1995).

The appellant's argument that the HO impermissibly refused to solicit testimony on the issue of his heart condition is not persuasive. The appellant was given the opportunity to offer his opinion as to the interrelationship of his service-connected skin condition and his heart murmur. However, his testimony, as well as any further testimony he may have had to offer on that issue, would have been entirely superfluous and have been properly excluded under 38 C.F.R. § 20.700(c) (1995) (the presiding member "may set reasonable time limits for the presentation of argument and may exclude ... testimony, and/or argument which is not relevant to the issue, or issues, being considered"). As a layperson, the appellant would not have been competent to offer relevant medical evidence on the determinative issue of medical causation no matter how long, or on how many subjects, he was permitted to testify. *See Espiritu,* 2 Vet.App. at 494. Moreover, because the appellant's claim was not well grounded in the first instance, the HO exceeded what was required by law when he ordered a medical examination and further development of the appellant's heart condition claim. *See Rabideau v. Derwinski,* 2 Vet.App. 141, 144 (1992) (where claim is not well grounded, VA is under no duty to provide appellant with examination or otherwise assist in the development of claim).

Finally, although the appellant implicitly contends that he was harmed in that he was denied service connection for a heart condition, it is not clear how any of the alleged infirmities actually operated to his detriment. For instance, the appellant argues that the CIRCULAR is ambiguous in that, inter alia, it does not provide clear guidance concerning whether the standard of review is de novo or contingent upon the appellant's filing new and material evidence, a point which was raised in his initial brief and repeatedly in

numerous supplemental filings. However, none of the "ambiguities" he points to appears to have any bearing on the HO's decision-making process in this case. The sum of the appellant's arguments are particularly puzzling in light of the fact that his particular hearing resulted in an increase in his disability rating for his service-connected skin condition and in a gratuitous medical examination and gratuitous further development of his heart claim.

The above discussion notwithstanding, however, it would be inappropriate for the Court to enter any definitive rulings regarding alleged infirmities with the HO program in general, and with the hearing afforded this appellant in particular. In light of the Court's determination (and the appellant's concession) that his claim for service connection of a heart disorder is not well grounded, the Court declines to consider further the appellant's extensive attack on the hearing officer program. *See Wilkins v. Brown*, 8 Vet.App. 555, 557 (1996) (because lack of new and material evidence precluded reopening, any decisions involving regulatory interpretations would be "purely advisory" and thus nonjusticiable); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–75, 112 S.Ct. 2130, 2143–44, 119 L.Ed.2d 351 (1992) (a generalized grievance against a governmental program does not satisfy the "case or controversy" requirement); *cf. Nagler v. Derwinski*, 1 Vet.App. 297, 306 (1991) (this Court lacks authority to issue declaratory judgments.)

### III. CONCLUSION

Upon consideration of the record, the submissions of the parties, and oral argument, the BVA decision of January 27, 1993, is AFFIRMED in its entirety.

STEINBERG, Judge, concurring:

I concur in the result reached by the majority and its excellent opinion save a few sentences. However, I do not agree with the dictum as to exclusion of the claimant's hearing testimony as irrelevant. *Ante* at 346. I also think it important to make clear that the Court is declining to review the appellant's facial challenges to the Hearing Officer (HO) program, not because he lacks any "jurisdictional" component of standing to make those challenges but because those challenges have not been presented with the specificity required for proper judicial review.

First, I question the advisability and correctness of the third and fourth sentences in the sixth paragraph of the opinion's part II.C., regarding the HO program. I can think of no appropriate reason for including this dictum. A claimant's testimony should not be excluded as irrelevant, pursuant to 38 C.F.R. § 20.700(c) (1995), in the nonadversarial proceedings before the Board of Veterans' Appeals (BVA) (indeed, § 20.700(c) stresses that nonadversarial nature) on the ground that the claimant is not competent to offer medical evidence. It is often virtually impossible to separate a claimant's testimony from his or her argument. Certainly, the claimant's *argument* as to medical causation is "relevant" and not subject to exclusion under § 20.700(c). Hearing officers should not be encouraged to exclude such claimant testimony/argument on grounds of relevancy or competency. Rather, the question of the competency of the claimant's testimony on a medical issue is a matter that should be considered in the adjudication of the claim.

Second, the Court has decided in the concluding paragraph in part II.C., to decline, on *prudential* grounds, to consider further the appellant's facial challenges to the HO program. I do not disagree with that prudential decision, *see Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); the broadness and vagueness of the appellant's facial challenges are such that they may fairly be characterized as merely a "generalized grievance", *Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 225, 94 S.Ct. 2925, 2934, 41 L.Ed.2d 706 (1974). However, I do not believe the Court would be without *jurisdiction* to review those challenges in this case. The majority's citation to *Lujan v. Defenders of Wildlife* for its exercise of judicial restraint might be read as suggesting a lack of jurisdiction based on the Constitutional, core components of standing. *See Defenders of Wildlife*, 504 U.S. 555, 562, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (holding that respondents had failed to make

"the requisite demonstration of (at least) injury and redressability"). I believe that the appellant here had the "core components" of standing to challenge the HO program, in that he was harmed by the denial of Department of Veterans Affairs (VA) benefits, the challenged BVA hearing in his case was a procedural stage in the denial of benefits, and the Court could provide relief in the form of an order for remand and readjudication. *See Allen v. Wright,* 468 U.S. 737, 751–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984).

The majority, citing *Wilkins v. Brown,* 8 Vet.App. 555, 557 (1996), seems, at least in part, to base its decision not to review the facial challenges to the HO program on the determination that the appellant did not submit a well-grounded claim. *Wilkins,* which found an absence of a "justiciable case or controversy" and dismissed the appeal in a case where there was no new and material evidence to reopen the disallowance of a previously and finally denied claim, dealt with an attack on the validity of substantive VA regulations, rather than a procedural challenge, as here. *Ibid.* If the Court required a well-grounded claim before we had jurisdiction over a procedural issue, then the Court could never have decided as it did *Graves* or *Robinette,* where there was no new and material evidence and no well-grounded claim, respectively. *Graves v. Brown,* 8 Vet.App. 522, 523–24 (1996); *Robinette v. Brown,* 8 Vet. App. 69, 80 (1995). In those cases, the Court examined the question whether VA had followed the proper procedure as to notifying the appellant under 38 U.S.C. § 5103(a), relating to incomplete VA-benefits applications, when there was indication in the record that evidence existed that, if submitted, might be sufficient to reopen the claim (*Graves* ) or make the claim well grounded (*Robinette* ). Hence, those cases show that the majority's citations to *Wilkins* and *Defenders of Wildlife* do not indicate any general well-grounded claim prerequisite for the Court to have jurisdiction over a case.