﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/21 Archive Date: 02/26/21

DOCKET NO. 210105-127748
DATE: February 26, 2021

REMAND

Entitlement to service connection for dermatopolymyositis (hypomyopathic) with skin rash of the face, neck, elbows hands is remanded.

Entitlement to service connection for lung nodule is remanded.

Entitlement to service connection for Sjogren's with dry mouth is remanded.

REASONS FOR REMAND

The Veteran served on active duty in the U.S. Air Force from May 1963 to May 1967, including service at Korat Royal Thai Air Force Base from June 1966 to May 1967. The Veteran had additional reserve service ending in August 1974.

A rating decision was issued under the legacy system in July 2017 and the Veteran submitted a timely notice of disagreement in August 2017. In November 2020, the agency of original jurisdiction (AOJ) issued a statement of the case. In January 2021 the Veteran opted into the modernized review system, also known as the Appeals Modernization Act (AMA), by submitting a VA Form 10182, Decision Review Request: Board Appeal, requesting review of the pertinent issues in the November 2020 statement of the case. Therefore, the November 2020 statement of the case is the decision on appeal. On the January 2021 VA Form 10182, the Veteran selected direct review by a Veterans Law Judge, therefore the Board may consider only the evidence of record at the time of the November 2020 statement of the case.

1. Entitlement to service connection for dermatopolymyositis (hypomyopathic) with skin rash of the face, neck, elbows hands.

2. Entitlement to service connection for Sjogren’s syndrome with dry mouth.

The Veteran contends that his current dermatopolymyositis (family of myositis disorders that includes polymyositis and dermatomyositis (inflammatory diseases)) and Sjogren’s syndrome (immune system disorder most often identified by dry eyes and a dry mouth) were caused by exposure to herbicide agents during active service in Thailand. See, e.g. October 2016 Veteran Statement. In this regard, the Board notes that in an April 2020 rating decision granting separate claims, VA conceded, on a facts-found basis, that the Veteran was exposed to herbicide agents during his service on Korat Royal Thai Air Force Base.

Although the Board regrets the delay, it finds that remand is necessary to correct predecisional duty-to-assist errors. See 38 C.F.R. § 20.802.

A review of the record shows that the Veteran has been diagnosed as having dermatomyositis and Sjogren’s syndrome. As noted, the Veteran believes there to be an association between his in-service exposure to herbicide agents and subsequent development of these disorders.

A private medical opinion was received by VA in October 2016, in which the Veteran’s primary care physician discussed, in pertinent part, the Veteran’s dermatomyositis and Sjogren’s syndrome. The physician opined that the Veteran’s “multiple medical problems could be caused, precipitated or exacerbated by his exposure to chemical defoliants and contaminants during the time he served in Southeast Asia.” Further, the physician stated that he understood “that, to date, there have been no definitive studies demonstrating a mechanism underlying this relationship,” some “observational studies do appear to show concordance.”

In October 2016, the Veteran also submitted a number of online articles. Although none of the online sources or journal articles submitted discuss a causal relationship or association between exposure to herbicide agents and Sjogren’s syndrome or dermatopolymyositis, the Veteran contends that the articles do support an association between exposure to Agent Orange or other herbicide agents and the development of autoimmune disorders.

In August 2020, the Veteran was afforded a VA examination in connection with these matters. The VA examiner diagnosed the Veteran as having dermatopolymyositis with skin rash. The examiner opined that the Veteran’s dermatopolymyositis was less likely than not proximately due to or the result of the Veteran’s service-connected diabetes mellitus disability. The examiner explained that dermatopolymyositis has an unknown cause, but is believed to be autoimmune related, whereas type 2 diabetes is related to the pancreas not producing enough insulin. There was no known relationship between the two conditions.

The August 2020 examiner also opined that the Veteran’s dermatopolymyositis was less likely than not proximately due to or the result of the Veteran’s diagnosed Sjogren’s syndrome because, although Sjogren’s syndrome is also an autoimmune disease and there was a correlation insofar as those with dermatopolymyositis tend to have other immune disorders, there was no known causal relationship between the two conditions.

In October 2020, the Veteran was afforded another VA examination in connection with this matter. The VA examiner diagnosed the Veteran as having dermatomyositis and Sjogren’s syndrome. The examiner opined that the Veteran’s dermatomyositis and Sjogren’s syndrome were less likely than not incurred in or caused by an in-service injury, event, or illness. For both opinions, the examiner reasoned that there was “no literature to support the nexus between ‘herbicide exposure during service’ and development” of Sjogren’s syndrome or dermatomyositis, and that neither condition was “currently recognized as a[n Agent Orange] presumptive condition.” The examiner cited the list of diseases presumed related to exposure to herbicide agents from publichealth.va.gov.

In November 2020, VA obtained a clarifying medical opinion from the clinician who examined the Veteran in October 2020. The clinician stated that her October 2020 “rationale was not solely based on the list of the presumptive condition, [sic] but also review of peer-reviewed medical literature conduction on the day the exam was conducted” and stressed that “there’s no CREDIBLE medical literature that supports this claim’s contentions.” More specifically, the examiner explained that:

The current state of knowledge in credible medical literatures does NOT support the causative relationship between herbicide exposure and development of Sjorgen’s [sic]. Peer-reviewed med literature states that the Sjorgen’s [sic] is an autoimmune condition, meaning it is caused by increased response of one’s own immune system to his/her own tissues/organs, which in this case the lacrimal & salivary glands.

Per UpToDate, titled “Neurologic manifestations of Sjogren’s syndrome” “Sjogren’s syndrome (SS) is a chronic autoimmune inflammatory disorder characterized by diminished lacrimal and salivary gland function.

The examiner also stated:

The current state of knowledge in credible medical literatures does NOT support the causative relationship between herbicide exposure and development of Dermatomyositis. Peer-reviewed med literature states that the Dermatomyositis [sic] is an [sic] genetically-mediated condition, meaning it is caused by complex genetic factors.

Per UpToDate, titled “Clinical manifestations of dermatomyositis and polymyositis in adults”

The clinical and serologic features of DM and PM vary among affected individuals and populations, depending upon immunogenetic and possibly other genetic factors.

Although the Board regrets further delay, remand is necessary to correct two predecisional duty-to-assist errors.

First, as set forth above, service treatment records show that in November 1966 the Veteran had a papular erythematous rash on his neck. The Board notes that symptoms of the Veteran’s dermatopolymyositis disability include skin rashes on the neck. The medical opinions of record, however, do not mention this history of in-service rash and instead consider only whether the Veteran’s dermatopolymyositis disability was caused by the Veteran’s exposure to herbicide agents or if it was secondary to another service-connected disability. The Board finds that it was error to fail to obtain a medical opinion as to whether the Veteran’s dermatopolymyositis disability was incurred in service. Remand is necessary to correct this predecisional error.

Second, the Board finds that the August 2020 and October 2020 VA examiner’s medical opinions and the November 2020 clarification are inadequate because they do not provide rationale to support the conclusion presented. Although the VA clinician asserted that there was no credible medical literature to support a causal relationship between exposure to herbicide agents and dermatopolymyositis and Sjogren’s syndrome, the clinician did not explain why “observational studies” referenced in the October 2016 private medical were not credible. In addition, the clinician did not address relevant evidence in the claims file, including the October 2016 private medical opinion and the internet and medical articles submitted by the Veteran in October 2016. Instead, the clinician offered only a conclusory opinion with irrelevant rationale. In her November 2020 clarification, the VA clinician supported her conclusions with quotes from “UpToDate” describing the manifestations of Sjogren’s syndrome and dermatomyositis. However, the fact that Sjogren’s syndrome is an auto-immune inflammatory disorder, or that the clinical and serologic features of dermatomyositis vary based on genetic factors, is not clearly relevant to the question of whether it is at least as likely as not that the Veteran’s in-service exposure to herbicide agents caused his current Sjogren’s syndrome or dermatopolymyositis disabilities.

The Board has also considered the private October 2016 medical opinion. That opinion, however, is equivocal and does not satisfy the at-least-as-likely-as-not standard. Rather, the Veteran’s private physician opined that the Veteran’s disabilities could have been caused, precipitated, or exacerbated by his exposure to herbicide agents. The physician acknowledged that there were no definitive studies showing a mechanism underlying a relationship between herbicide agents and dermatomyositis or Sjogren’s syndrome, but stated that observational studies appeared to show concordance. It is well established that medical opinions that are inconclusive in nature do not provide a sufficient basis to support a claim. See e.g. McLendon v. Nicholson, 20 Vet. App. 79, 83–84 (2006) (finding doctor’s opinion that “it is possible” and “it is within the realm of medical possibility” too speculative to establish medical nexus); Goss v. Brown, 9 Vet. App. 109, 114 (1996) (using the words “could not rule out” was too speculative to establish medical nexus); Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992) (holding that a physician’s statement that a service-connected disorder “may or may not” have prevented medical personnel from averting a Veteran’s death was not sufficient). Given the applicable standard of proof, the Board finds that the October 2016 opinion is insufficient to support an award of service connection.

Therefore, because there is no medical opinion of record sufficient to decide the claims, the RO erred in denying the claim based on the VA clinician’s opinions and clarification. Remand is necessary to correct this error. See 38 C.F.R. § 20.802.

3. Entitlement to service connection for lung nodule.

The Veteran contends that his current lung nodule disability was caused by exposure to herbicide agents during active service in Thailand. See, e.g. October 2016 Veteran Statement.

Although the Board regrets further delay, it finds that remand is necessary to correct a predecisional duty-to-assist error.

A review of the record shows that in February 2008, the Veteran had a CT scan of the abdomen and pelvis. The impression included, in pertinent part, a somewhat nodular density within the anteromedial right middle lobe, for which follow-up was recommended with a repeat study in three months. The Veteran’s private physician later reported a diagnosis of right middle lobe nodule. Additionally, a June 2016 VA treatment records show that a lung nodule was confirmed.

A private medical opinion was received by VA in October 2016, in which the Veteran’s primary care physician discussed, in pertinent part, the Veteran’s left lung nodules. As set forth above, the physician opined that the Veteran’s “multiple medical problems could be caused, precipitated or exacerbated by his exposure to chemical defoliants and contaminants during the time he served in Southeast Asia.” Further, the physician stated that he understood “that, to date, there have been no definitive studies demonstrating a mechanism underlying this relationship,” “observational studies do appear to show concordance.”

The Veteran has not been afforded a VA examination in connection with this claim. As set forth above, the October 2016 private medical opinion indicates that the Veteran’s lung nodules could have been caused by the Veteran’s exposure to herbicide agents. Although the opinion is too speculative to support service connection on its own, the Board finds that it does contain an indication that the Veteran had lung nodules during the pendency of the claim which may be associated with service. Under these circumstances, a medical examination or opinion is necessary. 38 C.F.R. § 3.159(c)(4); McLendon, 20 Vet. App. at 81.

The Board therefore finds that it was a predecisional duty-to-assist error not to provide an examination or obtain a medical opinion before deciding the claim of entitlement to service connection for a lung nodule disability. Remand is necessary to correct the error. See 38 C.F.R. § 20.802.

The matters are REMANDED for the following action:

1. Provide access to the Veteran’s claims folder to an appropriate clinician or clinicians for the purposes of obtaining a medical opinion on the nature and etiology of the Veteran’s current dermatopolymyositis and Sjogren’s syndrome disabilites. The need for an examination is left to the discretion of the clinician or clinicians.

After reviewing the record and performing an examination should the clinician or clinicians deem an examination necessary, the clinician or clinicians should provide an opinion, with supporting rationale, as to the following: 

(a) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s dermatopolymyositis disability had its inception during the Veteran’s active service or is otherwise causally related to his service, to include his conceded exposure to herbicide agents.

In providing this opinion, the clinician or clinicians should consider and reference relevant evidence of record, to include service treatment records showing that the Veteran had a papular erythematous rash on his neck in November 1966, the October 2016 private medical opinion, and Veteran-submitted internet and medical articles received by VA in October 2016. The clinician should also address any medical literature supporting a causative relationship between exposure to herbicide agents and the development of dermatopolymyositis, and provide a thorough rationale for whether the clinician finds this literature credible or relevant.

(b) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s Sjogren’s syndrome disability had its inception during the Veteran’s active service or is otherwise causally related to his service, to include his conceded exposure to herbicide agents.

In providing this opinion, the clinician or clinicians should consider and reference relevant evidence of record to include the October 2016 private medical opinion and Veteran-submitted internet and medical articles received by VA in October 2016. The clinician should also address any medical literature supporting a causative relationship between exposure to herbicide agents and the development of Sjogren’s syndrome, and provide a thorough rationale for whether the clinician finds this literature credible or relevant.

2. Provide access to the Veteran’s claims folder to an appropriate clinician for the purposes of obtaining a medical opinion on the nature and etiology of the Veteran’s current lung nodule disability. The need for an examination is left to the discretion of the clinician.

After reviewing the record and performing an examination should the clinician deem an examination necessary, the clinician should provide an opinion, with supporting rationale, as to the following: 

Is it at least as likely as not (50 percent or greater probability) that the Veteran’s lung nodule disability had its inception during the Veteran’s active service or is otherwise causally related to his service, to include his conceded exposure to herbicide agents.

(Continued on the next page)

 

In providing the preceding opinion, the clinician should address any medical literature supporting a causative relationship between exposure to herbicide agents and the development of lung nodules, and provide a thorough rationale for whether the clinician finds this literature credible or relevant.

 

 

KRISTIN E. NEILSON

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C. Hillan Sosa, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.