**Evelyn L. PEARLMAN, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 97–825.

United States Court of Veterans Appeals.

Oct. 7, 1998.

Evelyn Pearlman, pro se.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Edward V. Cassidy, Jr., Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

HOLDAWAY, Judge:

The appellant, Evelyn L. Pearlman, appeals a January 1997 decision of the Board of Veterans' Appeals (BVA or Board) which concluded that she had not submitted a well-grounded claim to establish entitlement to dependency and indemnity compensation (DIC) and accrued benefits. The claim is based on an allegation by the deceased veteran that he was exposed to mustard gas. The Court has jurisdiction of this case under 38 U.S.C. § 7252(a). For the following reasons, the Court will vacate the decision of the Board and remand the matter for readjudication consistent with this opinion.

## I. FACTS

The appellant is the surviving spouse of the veteran, Harry J. Pearlman. The veteran served in the U.S. Army from December 1942 to March 1946. Upon induction, the veteran declared that his lungs were "normal." His service medical records indicate that shortly after induction, he complained of a sore throat, cough, and chest pain. In December 1942, Dr. A.A. Plaut diagnosed him with acute catarrhal nasopharyngitis. That same month, Dr. M.E. Windmiller added to that diagnosis "[p]neumonia, lobar, type undetermined, left base, secondary to common cold." By January 1943, the veteran stated that he felt fine and did not have any symptoms. His discharge examination noted his bout of pneumonia in service but found his lungs to be normal.

In April 1946, the veteran filed a claim for compensation for a lung disorder. Shortly thereafter, VA denied his claim on the grounds that the condition was not noted on his discharge examination.

In March 1962, Dr. Milton Levine, the veteran's treating physician, diagnosed him with pulmonary sarcoidosis and alveolar-capillary block. The veteran then attempted to reopen his claim for compensation and enclosed a report from Dr. Levine indicating his diagnosis. In April 1962, VA again denied his claim, finding that any in-service lung condition was resolved prior to discharge and that his current disability was not related to his in-service condition. In response to VA's decision, Dr. Levine wrote another letter on behalf of the veteran stating that "[i]t is entirely possible" that the onset of the veteran's condition occurred during military service. The veteran then appealed his decision to the Board. The Board affirmed the VA's finding in January 1963.

In August 1991, the veteran again attempted to reopen his claim for compensation. He included with his claim: (1) a letter from Dr. Robert Hewlett, dated August 1991, stating that the veteran was currently diagnosed with chronic obstructive pulmonary disease (COPD), bronchiectasis, and sarcoidosis; (2) several medical reports from Dr. John F. Mitchell, dated during 1991, which diagnosed

him with pulmonary sarcoidosis, COPD, and pneumonia; (3) radiological reports interpreted by Dr. John W. Renner in March 1991, and by Dr. Arthur Diamond in April 1991; and (4) an extensive medical report from Dr. Stephen Brown. Dr. Brown did not note a history of exposure to mustard gas as a contributing cause to the veteran's lung conditions. However, he did note that prior to stopping thirty-five years before, the veteran had smoked regularly for ten years. In addition, Dr. Brown noted that the veteran had worked for thirty years making venetian blinds without ever wearing a protective mask. As a consequence of that employment, the veteran's lungs were exposed to particulates from spray paint and saw-dust. Both Dr. Brown and Dr. Mitchell remarked that this exposure contributed to the veteran's condition. In November 1991, VA issued a decision denying the veteran's claim for compensation because he had not presented medical evidence to link his current disability to an in-service occurrence or aggravation.

In October 1992, the veteran wrote a letter to VA claiming for the first time that he was exposed to mustard gas during military service. He stated that he had been required to take part in a secret test of protective equipment during training at Camp Crowder, Missouri. He further stated that he had been especially vulnerable to mustard gas because he had just recovered from pneumonia. Subsequently, he had developed laryngitis, bronchitis, and emphysema. The veteran supported his statement with a medical report from Dr. Hewlett which stated that he was currently treating the veteran for COPD, chronic bronchitis, bronchiectasis, and bullae, and that the veteran also had been treated in the past for laryngitis and emphysema.

In response to his claim, VA sent an inquiry to the Department of the Army (Army) to substantiate his claim of exposure to mustard gas. The Army replied that it did not have any records of mustard gas exposure prior to 1955. VA then sent an inquiry to the historical division of the U.S. Army Chemical and Biological Defense Command which replied that it could not provide any further information on the veteran's claim. Rather, the reply suggested the possibility that the veteran was relating his exposure to a non-toxic gas, such as tear gas, during a standard training exercise. In May 1994, VA issued an administrative decision which opined that the veteran was not exposed to mustard gas because the veteran was not stationed where toxic gas testing was known to have taken place, and his service records did not indicate treatment for exposure.

In February 1993, the veteran died as a result of acute respiratory failure due to COPD and pulmonary fibrosis. The appellant, as the veteran's surviving spouse, then filed a claim for DIC and accrued benefits in August 1993. In June 1994, VA denied her claim on the basis that there was no evidence of mustard gas testing at Camp Crowder and that there was no evidence in the service medical records indicating treatment for exposure. Subsequently, the appellant appealed that decision to the Board. In her substantive appeal, she responded to the suggestion that her husband was not relating his exposure to mustard gas, but rather his exposure to a more benign agent. She stated that her husband had informed her that the mustard gas testing was a completely separate event from the standard training exercise. He also informed her that he had been told to keep this exposure secret.

After reviewing the evidence, the Board found that the claim was not well grounded because the appellant had not presented competent evidence to support her contention that her husband had been exposed to mustard gas in service. By doing so, the Board necessarily found that a veteran is not competent to testify that he was exposed to mustard gas. Due to the fact that the Board did not find the claim well grounded, the Board did not weigh the credibility of the evidence in the record.

## II. ANALYSIS

DIC is paid to the surviving spouse, children, or parents of a qualifying veteran who dies from a service-connected disability. 38 U.S.C. § 1310. For such a death to be considered service connected, it must result from disability incurred in the line of duty. 38 U.S.C. § 101(16).

In order to service connect a disability, a claimant has the initial burden of showing that a claim is well grounded. 38 U.S.C. § 5107(a); *see Grottveit v. Brown,* 5 Vet.App. 91, 92 (1993). For a claim to be well grounded, generally there must be: (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *Epps v. Brown,* 9 Vet.App. 341 (1996), *aff'd sub nom. Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998).

However, for veterans exposed to specified vesicant agents, this initial burden is relaxed. *See* 38 C.F.R. § 3.316 (1997). This regulation provides that:

(a) Except as provided in paragraph (b) of this section, exposure to the specified vesicant agents during active military service under the circumstances described below[,] together with the subsequent development of any of the indicated conditions[,] is sufficient to establish service connection for that condition:

. . . .

(2) Full-body exposure to nitrogen or sulfur mustard or Lewisite during active military service together with the subsequent development of a chronic form of laryngitis, bronchitis, emphysema, asthma[,] or chronic obstructive pulmonary disease.

. . . .

(b) Service connection will not be established under this section if the claimed condition is due to the veteran's own willful misconduct or there is affirmative evidence that establishes a non[-]service-related supervening condition or event as the cause of the claimed condition.

38 C.F.R. § 3.316 (citations omitted). Under this regulation, the veteran is relieved of his burden of providing medical evidence of a nexus between the current disability and the in-service exposure. Rather, service connection is granted if the appellant has experienced: (1) full-body exposure, (2) to the specified vesicant agent, (3) during active military service, and (4) has subsequently developed the specified conditions; all this is subject to the exception in paragraph (b). This regulation does not require a medical nexus, but rather a nexus is presumed if the other conditions are met. The reason behind this relaxed standard is the circumstances surrounding the testing of mustard gas.

Some Naval personnel were experimentally exposed to mustard gas during full-body field or chamber tests of protective equipment and clothing conducted at the Naval Research Laboratory, located at Edgewood Arsenal, Washington, DC, between 1943 and 1945. Similar testing may have been conducted at other locations during World War II. These World War II tests were classified, participants were instructed not to discuss their involvement, and medical records associated with the tests are generally unavailable. No long-term follow-up examinations were conducted. For these reasons, some participants may not have filed claims with VA for disabilities resulting from mustard gas poisoning, or, if they did file claims, may have experienced difficulty establishing entitlement to benefits.

VA believes that the special circumstances surrounding these World War II testing programs have placed veterans who participated in them at a disadvantage when attempting to establish entitlement to compensation for disability or death resulting from the experimental exposure. The proposed rule specifies that, if exposure occurred under the described circumstances, disabilities or deaths resulting from certain diseases are to be recognized as connected to veteran's exposure in-service.

57 Fed.Reg. 1699 (1992).

Veterans who were exposed to mustard gas during experimental tests of protective clothing and equipment during World War II, however, face a potentially insurmountable disadvantage when attempting to establish entitlement to compensation. These tests were conducted behind a strictly enforced veil of secrecy, medical

records associated with the tests are generally unavailable, and no long-term follow-up examinations were conducted. As a result, service medical records for individuals who participated in those tests may not show evidence of the acute effects of mustard gas exposure. Furthermore, it is likely that participants who developed chronic effects of exposure did not previously file compensation claims with VA solely because they had been instructed not to discuss their involvement in the tests. Physicians who may have treated these veterans for chronic effects more than [forty] years ago have almost certainly retired from private practice, making it impossible to establish that a chronic form of one of the specified disabilities has existed continually since exposure to mustard gas. For these reasons, VA believes that requiring a chronic form of one of the specified conditions, rather than establishing a manifestation requirement, better serves the purpose of rulemaking.

57 Fed.Reg. 33876 (1992).

In this case, the appellant relies on her husband's account that he was exposed to mustard gas during active military service. She has also provided medical evidence establishing a diagnosis of the specified conditions. The Board, however, found that her claim was not well grounded because she had not presented competent evidence that her husband was exposed to mustard gas.

▬ It is well established by this Court that the evidence in support of a claim must be presumed true for the purposes of establishing a well-grounded claim unless the evidentiary assertion is inherently incredible or the fact asserted is beyond the competence of the person making the assertion. *King v. Brown*, 5 Vet.App. 19, 21 (1993). For example, a lay person is competent to describe symptoms, but is not competent to offer evidence which requires medical knowledge, such as a diagnosis or a determination of etiology. *See Espiritu v. Derwinski*, 2 Vet. App. 492, 494–95 (1992). The Secretary concedes, and the Court so holds, that for the purposes of submitting a well-grounded claim relating to exposure to toxic gases under this regulation, the Board must assume that the lay testimony of exposure is true. Therefore, the appellant has met her burden of submitting a well-grounded claim. The Court notes, however, that whether or not the veteran meets the requirements of this regulation, including whether or not the veteran was actually exposed to the specified vesicant agents, is a question of fact for the Board to determine after full development of the facts. The Board, therefore, must consider the credibility of the veteran's testimony in light of all the evidence in the file.

Furthermore, the Board erred by following the standard test for well groundedness rather than the relaxed standard offered veterans who were exposed to toxic gases. *Compare* 38 C.F.R. § 3.316 with *Caluza, supra.* The premise behind the regulation is the fact that there is little or no evidence to document that the tests were actually conducted. *See* 57 Fed.Reg. 33876 (1992). The Board's requirement that the appellant show documented medical evidence of her husband's in-service incurrence, as is generally required, is inconsistent with the regulation and the Secretary's finding that such evidence may not exist in an unclassified form for those exposed. Thus, under this regulation, the Board is charged with the very difficult task of ascertaining what transpired more than fifty years ago with very little evidence to consider.

## III. CONCLUSION

The decision of the Board is VACATED and the matter is REMANDED for readjudication consistent with this opinion and in accordance with the benefit of the doubt doctrine under 38 U.S.C. § 5107(b), and its duty to provide reasons and bases for its decision under 38 U.S.C. § 7104(d)(1). The appellant will be free to submit additional evidence and argument on remand. *See Quarles v. Derwinski*, 3 Vet.App. 129 (1992).