**Stephen B. JONES, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 96–1253.

United States Court of Appeals for Veterans Claims.

May 11, 1999.

John S. Lopatto, III, was on the brief for appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Deputy Assistant General Counsel; and Jacqueline M. Sims, Washington, DC, were on the brief for appellee.

Before KRAMER, HOLDAWAY, and GREENE, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a dissenting opinion.

HOLDAWAY, Judge:

The appellant, Stephen B. Jones, appeals the May 1996 decision of the Board of Veterans' Appeals (BVA or Board) which determined, inter alia, that his claim for secondary service connection of residuals of a fracture of the tibia and the fibula of his left leg was not well grounded. This appeal is timely, and the Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The appellant served on active duty in the U.S. Army from June 1968 to June 1970. In 1971, he was in a motorcycle accident wherein he suffered several injuries including a fractured left tibia and fibula. The appellant underwent several surgeries on his left leg which did not completely repair the nonunion of his left tibia and fibula. The surgeries also resulted in shortening his left leg by over four inches.

In January 1986, the appellant was granted service connection for post-traumatic stress disorder (PTSD) and subsequently assigned a 50% disability rating. In April 1990, his disability rating was increased to 70% disabling. In January 1991, the appellant filed a claim for service connection of his left leg condition. W.D. Gammon, Ph.D., a VA clinical psychologist, submitted a letter to the VA regional office (VARO) in support of the appellant's claim for service connection of his left leg condition. He stated that after service the appellant had exhibited many behavioral indicia of PTSD, including thrill-seeking behavior. Dr. Gammon concluded that the appellant's motorcycle accident in 1971 was the result of the appellant's thrill-seeking behavior. In March 1991, the appellant submitted a Substantive Appeal with regard to the VARO's decision denying an increased disability rating for PTSD, service connection for his right knee, and a clothing allowance. As part of his Substantive Appeal, the appellant stated: "My left leg condition is a result of thrill seeking in persuit [sic] of the constant adrenal [sic] rush reward Vietnam had given me after becoming a survivor." At a June 1991 VA personal hearing, the appellant testified that Dr. Gammon felt that the appellant's leg injury was caused by his thrill-seeking behavior. At an October 1991 hearing before the BVA, the appellant described the events leading up to his 1971 accident as follows:

Some people sent me on a mission to go to the liquor store to get some few more beers and I was driving back to this place and there was a car in front of me, just going slow and I looked out around him and saw it was safe to pass and I got beside him and he downshifted his car. When I got beside him and his car turned sideways and I served [sic] to avoid him and the center stand of my motorcycle hit the pavement at which time, the rear wheel was picked up off the pavement and I lost control and I went off the road.

Subsequently, Dr. Gammon submitted another statement pointing out that there was an increasing body of evidence "to support the notion that 'thrill-seeking' behavior is regularly seen in PTSD combat vet[erans]." The

appellant also submitted an April 1993 statement that reiterated his belief that his motorcycle accident was precipitated by PTSD-induced thrill seeking.

In February 1993, the VARO denied secondary service connection for the appellant's left leg disability because the evidence of record did not demonstrate that the accident was caused by his thrill-seeking behavior. On appeal to the BVA, the Board determined that there was no reasonable basis in the evidence of record to show that the accident was caused by the appellant's thrill-seeking behavior. The Board recognized that Dr. Gammon had opined that the accident was caused by thrill-seeking behavior, but stated that the doctor was not an eyewitness and "that the factual record does not support such a conclusion."

## II. ANALYSIS

■ A claim for secondary service connection must be granted when a disability "is proximately due to or the result of a service-connected disease or injury." 38 C.F.R. § 3.310(a) (1998). Like all claims, a claim for secondary service connection must be supported by "evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *Buckley v. West*, 12 Vet.App. 76, 84 (1998). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). Generally, for a claim to be well grounded, a claimant must submit each of the following: (1) a medical diagnosis of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd. per curiam*, 78 F.3d 604 (Fed.Cir.1996) (table). With regard to a claim for secondary service connection, a claimant must provide competent evidence that the secondary condition was caused by the service-connected condition. *See Wallin v. West*, 11 Vet.App. 509, 512 (1998); *Reiber v. Brown*, 7 Vet.App. 513, 516–17 (1995). A BVA decision on whether a claim is well grounded is a matter of law which this Court reviews de novo. *See Caluza*, 7 Vet.App. at 505. The credibility of the evidence is presumed when determining whether a claim is well grounded. *See Robinette v. Brown*, 8 Vet.App. 69, 75–76 (1995); *King v. Brown*, 5 Vet.App. 19, 21 (1993). However, the presumption of credibility does not apply where a fact asserted is beyond a person's competency or where the evidence is inherently false. *See id.*

■ There is no dispute that the appellant suffers from a current disability of the left leg or that he is service connected for PTSD. The question before the Court is whether there is competent evidence to demonstrate a reasonable possibility that the motorcycle accident was *proximately* caused by PTSD-induced thrill-seeking behavior of the appellant. Based on de novo review of the evidence, the Court finds that there is not such evidence and that the claim is not well grounded. *See Wallin, Reiber,* and *Caluza,* all *supra.*

In *Reiber,* the Court held that a veteran's contention, that his lower back disorder was caused as a result of a fall precipitated by his service-connected left ankle condition, required a two-step analysis to determine if the evidence was sufficient to establish proximate cause. 7 Vet.App. at 516. First, the Court determined that the appellant's testimony was competent to establish that his service-connected ankle condition had caused his fall. *See id.* Second, the Court found that the appellant had submitted medical evidence that the fall had indeed caused his back injury. *See id.* Based on that analysis, the Court found the claim for secondary service connection for the lower back disorder well grounded. *See id.* at 517.

In the matter presently before the Court, the appellant is competent to testify as to the sequence of events that led to his motorcycle accident. *See Reiber, supra.* The appellant testified that the accident was caused when he attempted to pass a slow-moving automobile. He testified that he looked ahead and saw that it was safe to pass and pulled along

side the slow-moving vehicle. At that time, for an unknown reason, the automobile downshifted and turned sideways. The automobile's action caused the appellant to swerve to avoid the automobile, to lose control of his motorcycle, and to go off the road. When the appellant veered off the road, he suffered multiple severe injuries. The appellant's testimony establishes that his accident was caused by the automobile that turned sideways while the appellant was attempting to pass it. There is no indication in the record that the appellant's behavior was reckless or even negligent. In fact, if the appellant's account is correct, he was proceeding in a careful manner and was injured by the negligence of the other driver. It was that negligence that was the proximate cause of his injury. Therefore, as the Board found, there is no reasonable basis in the evidence of record to demonstrate that the proximate cause of his left leg injuries was thrill-seeking behavior related to PTSD. For that reason, his claim is not well grounded. *See Reiber* and *Caluza,* both *supra.*

The appellant has submitted several statements indicating that he believes, in agreement with Dr. Gammon, that his motorcycle accident was caused by thrill-seeking behavior due to PTSD. First, the appellant is not competent to establish that any of his actions were caused by thrill-seeking behavior. That determination is a medical question that requires medical expertise. *See Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993); *Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). Second, to the extent his statements imply that the accident was caused by any action on his part, such implication, in light of his contrary testimony, is insufficient to establish a well-grounded claim. *Cf. Robinette* and *King,* both *supra* (holding that statements that are inherently false are insufficient to well ground a claim).

Dr. Gammon is a medical professional who is competent to testify that the appellant's service-connection PTSD caused thrill-seeking behavior in the appellant. *See Cohen v. Brown,* 10 Vet.App. 128, 139–42 (1997). That fact was expressly acknowledged by the Board. However, Dr. Gammon was not an eyewitness to the scene of the appellant's accident. Any opinion regarding what actions or sequence of events caused the accident is outside the scope of his competence. *Cf. Espiritu,* 2 Vet.App. at 494 (holding that lay opinions regarding medical questions were not competent evidence to establish a well-grounded claim). Therefore, Dr. Gammon's medical opinion has no probative weight with respect to the proximate cause of the appellant's accident. *Cf. Cohen,* 10 Vet. App at 145 (holding that a medical professional's opinion based on a post-service examination of a veteran is not competent evidence that an in-service stressor occurred); *Reonal v. Brown,* 5 Vet.App. 458, 460–61 (1993) (holding that a medical opinion based on a factual predicate that had been rejected by the Board has no probative value and is not, therefore, material evidence that warrants a reopening of the previously disallowed claim). Because the appellant has not submitted evidence that demonstrates that his motorcycle accident and resulting left leg injury was proximately caused by thrill-seeking behavior, his claim is not well grounded, and the decision of the Board will be affirmed.

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand. The Court is also satisfied that the BVA decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990).

The decision of the Board is AFFIRMED.

KRAMER, Judge, dissenting:

On appeal, the Secretary makes essentially two arguments. First, he argues that, because the effective date for service connection for post-traumatic stress disorder (PTSD) is in 1984, the appellant did not have a "predicate service-connected disability" at the time of the 1971 accident and that his claim for secondary service connection is therefore barred by 38 C.F.R. § 3.310(a) (1998) and *Allen v. Brown,* 7 Vet.App. 439, 446 (1995) (en banc). Secretary's Brief (Br.)

at 11–12. Second, the Secretary argues that the evidence does not demonstrate that the appellant was suffering from PTSD at the time of the accident in 1971 and that PTSD therefore could not have caused the accident. Secretary's Br. at 11, 16. Because I believe that the appellant's claim is not barred as a matter of law and that he has submitted a well-grounded claim, I would vacate the decision of the Board and remand the matter for a merits adjudication. I therefore respectfully dissent.

With regard to the Secretary's first argument (which was not addressed by the majority), 38 C.F.R. § 3.310(a) provides that a "[d]isability which is proximately due to or the result of a service-connected disease or injury shall be service connected." However, contrary to the Secretary's apparent interpretation of this section, there is nothing in the language of § 3.310(a) that would preclude secondary service connection for a secondary disability that arises prior to the effective date of service connection for the primary disability. See Gardner v. Brown, 5 F.3d 1456, 1458 (Fed.Cir.1993) ("starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter" (internal quotation marks omitted)), aff'd, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); Smith (William A.) v. Brown, 35 F.3d 1516, 1523 (Fed.Cir. 1994) (canons of statutory interpretation apply also to interpreting regulations); see also Gardner, 513 U.S. at 118, 115 S.Ct. 552 ("interpretive doubt is to be resolved in the veteran's favor"); Allen, 7 Vet.App. at 446 (same). Similarly, the Secretary's reliance on Allen is misplaced. See Allen, 7 Vet.App. at 448 ("[T]he Court holds that the term 'disability' as used in [38 U.S.C.] § 1110 refers to impairment of earning capacity, and that such definition mandates that any additional impairment of earning capacity resulting from an already service-connected condition ... shall be compensated." (emphasis in original omitted; emphasis added)). The pertinent language in Allen stands for the proposition that compensation for a disability attributable to a secondarily service-connected condition could be paid only for a period after service connection for the primary condition has been established. Cf. Barela v.

West, 11 Vet.App. 280, 283 (1998) (although statute prohibited compensation for disability due to alcohol and drug abuse, it did not bar award of service connection). This language, however, simply does not address the service-connectability of a secondary condition that had its onset prior to the effective date of service connection for the primary condition. Consequently, I would reject the Secretary's arguments that the appellant's claim for secondary service connection is barred as a matter of law.

Further, I believe that the appellant's claim is well grounded. As the majority acknowledges, "[t]here is no dispute that the appellant suffers from a current disability of the left leg or that he is service connected for PTSD." Ante at 385–86. As the majority further acknowledges, there is evidence of record that the appellant's current left leg disability is attributable to his 1971 motorcycle accident. Ante at 384. Consequently, in order to well ground his claim for service connection, there must be evidence relating the appellant's accident (and thus the resulting leg disability) to his service-connected PTSD. See Velez v. West, 11 Vet.App. 148, 158 (1998). Here, the appellant has submitted a statement indicating that his left leg condition was the "result of thrill seeking in p[u]rsuit of the constant adrenal rush reward Vietnam had given [him] after becoming a survivor." R. at 619. The appellant also submitted a statement in support of claim, in which he stated that "the residuals of fracture of [left] lower leg are ... the result of a motorcycle accident precipitated by [PTSD-]induced thrill seeking." R. at 871–72. In addition, Dr. Gammon submitted a letter, stating that the appellant "exhibited many of the behaviors characteristically seen in individuals with PTSD including 'thrill-seeking' behavior. As a result of this behavior, [the appellant] was involved in a motorcycle accident ... resulting in a left leg injury for which he still wears a special brace and shoe." R. at 583. Because I believe that the appellant is competent to opine as the nature of his behavior at the time of the accident (that he was engaging in thrill-seeking behavior) and as to whether it was that behavior that caused the accident, and be-

cause I further believe that the doctor is competent to opine as to a connection between the behavior that the appellant was engaging in at the time of the accident and his PTSD, I would find that the appellant has submitted plausible evidence that the accident, and thus his current leg disability, is related to his service-connected PTSD. *See White v. Derwinski,* 1 Vet.App. 519, 521 (1991) (threshold as to whether claim is well grounded is "rather low").

As the majority points out, there is also evidence of record indicating that the actions of another driver, rather than the appellant's PTSD-induced thrill seeking, may have caused the motorcycle accident. Admittedly, this evidence is patently more detailed and potentially more credible than the evidence that the appellant was engaging in thrill-seeking behavior at the time of the accident. However, the Court has consistently held that, for purposes of determining whether a claim is well grounded, the evidence *in support* of the claim is *presumed credible. See Elkins v. West,* 12 Vet.App. 209, 219 (1999) (en banc); *Winters v. West,* 12 Vet.App. 203, 208 (1999) (en banc); *Pearlman v. West,* 11 Vet.App. 443, 447 (1998); *Robinette . v. Brown,* 8 Vet.App. 69, 75–76 (1995); *King v. Brown,* 5 Vet.App. 19, 21 (1993). It is only in an ensuing merits adjudication that the weight and credibility of the evidence is to be assessed. *See Robinette,* 8 Vet.App. at 76; *see also Rucker v. Brown,* 10 Vet.App. 67, 72 (1997) (holding that Board erred in assessing weight and credibility of evidence before determining whether claim was well grounded). Consequently, this negative evidence, no matter how compelling, should not be considered in determining whether the appellant has submitted a well-grounded claim.

Rather than presume credible the evidence in support of the appellant's claim, the majority, in reviewing de novo whether the appellant submitted a well-grounded claim, has essentially assessed the weight and credibility of the evidence, deemed more credible the evidence *against* the appellant's claim, and thereby concluded that the actions of the other driver caused the appellant's motorcycle accident and resulting injuries. In rejecting the evidence in support of the appellant's claim (evidence that PTSD-induced thrill seeking caused the accident), the majority then implies that such evidence is inherently incredible because it conflicts with the negative evidence of record. Although the Board and the Court are not required, at the well-grounding stage, to presume to be true appellant-submitted positive evidence that is inherently incredible, *see Robinette, supra,* that exception to the presumption of credibility is not meant to allow the weighing of conflicting evidence at a well-grounding stage and the discarding of evidence that, although it supports the claim, appears to be less credible. *See Rucker,* 10 Vet.App. at 78 (Steinberg, J., concurring in part, dissenting in part) (at threshold stage of well grounding, Board generally ought not to weigh evidence or consider negative evidence).

For the foregoing reasons, I believe that the appellant's claim is well grounded and that the claim therefore should be remanded for a merits adjudication.