Citation Nr: 1812664 
Decision Date: 02/28/18 Archive Date: 03/08/18

DOCKET NO. 13-21 711A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for a respiratory disability, claimed as bronchitis, to include as due to exposure to mustard gas and other live gases.

2. Entitlement to service connection for a bilateral eye disability.



REPRESENTATION

Appellant represented by: Disabled American Veterans



ATTORNEY FOR THE BOARD

Suzie Gaston, Counsel



INTRODUCTION

The Veteran served on active duty from January 1967 to December 1968. 

This matter comes before the Board of Veterans' Appeals (hereinafter Board) on appeal from a March 2012 rating decision, by the Muskogee, Oklahoma, Regional Office (RO), which denied the Veteran's claims of entitlement to service connection for a respiratory condition, diagnosed as bronchitis, to include as due to exposure to mustard gas, and service connection for a bilateral eye condition. He perfected a timely appeal to that decision. 

In his substantive appeal (VA Form 9), dated in August 2013, the Veteran requested a Board hearing in Washington, D.C. By letter dated in February 2015, the Veteran was notified that a hearing had been scheduled for March 30, 2015. The Veteran failed to appear for this hearing. To the Board's knowledge, the Veteran has offered no explanation as to why he failed to appear for the scheduled hearing. Accordingly, the Board considers this hearing request withdrawn. See 38 C.F.R. § 20.704(d) (2017). 

In a May 2015 decision, as pertinent to this appeal, the Board denied service connection for bronchitis and remanded the issue of service connection for a bilateral eye disorder. The Veteran appealed this decision to the United States Court of Appeals for Veterans Claims ("Court"). In a December 2016 Memorandum Decision, the Court vacated the May 2015 decision to the extent that it denied service connection for bronchitis. In June 2017, the Board remanded the case to the RO for development to comply with the Court's directives. Following the requested development, a supplemental statement of the case (SSOC) was issued in September 2017. 



FINDINGS OF FACT

1. The Veteran was not exposed to mustard gas or Lewisite and other unspecified harmful chemicals during active service. 

2. A chronic respiratory condition, including bronchitis, did not have onset during active service and is not otherwise related to active service, including any exposure to mustard gas or other gases. 

3. The Veteran does not have a bilateral eye disability that is related to his active service or to a service connected disability. 


CONCLUSIONS OF LAW

1. The criteria for service connection for a respiratory disorder, diagnosed as bronchitis and COPD, due to exposure to mustard gas, have not all been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.316 (2017). 

2. The criteria for service connection for a bilateral eye disorder have not all been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303 (2017). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Pertinent Laws & Regulations-Service Connection.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. § 1110 (2012); 38 C.F.R. § 3.303 (a) (2017). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

For a showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Continuity of symptomatology is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. If the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b) (2017). 

The Veteran can attest to factual matters of which he has first-hand knowledge, such as experiencing pain in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a lay person is competent to identify the medical condition (noting that sometimes the lay person will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. 

II. Factual background & Analysis-S/C Respiratory disability.

The Veteran essentially contends that his chronic bronchitis developed as a result of his exposure to mustard gas while on active duty. In a statement in support of claim, dated in November 2010, the Veteran maintained that he was exposed to mustard gas while participating in face mask drills with live gases in 1967 and 1968 at Fort Benning, Georgia and Fort Polk, Louisiana. The Veteran related that he was diagnosed with chronic bronchitis in 1980. 

The Veteran has generally contended that he has a respiratory condition, specifically bronchitis, due to exposure to mustard gas in service. Claims based on the chronic effects of exposure to mustard gas are governed by the provisions of 38 C.F.R. § 3.316. Those provisions are as follows: 

(a) Except as provided in paragraph (b) of this section, exposure to the specified vesicant agents during active military service under the circumstances described below, together with the subsequent development of any of the indicated conditions, is sufficient to establish service connection for that condition:

(1) Full-body exposure to nitrogen or sulfur mustard during active military service together with the subsequent development of chronic conjunctivitis, keratitis, corneal opacities, scar formation, or the following cancers: nasopharyngeal, laryngeal, lung (except mesothelioma), or squamous cell carcinoma of the skin.

(2) Full-body exposure to nitrogen or sulfur mustard or Lewisite during active military service together with the subsequent development of a chronic form of laryngitis, bronchitis, emphysema, asthma, or chronic obstructive pulmonary disease.

(3) Full-body exposure to nitrogen mustard during active military service together with the subsequent development of acute nonlymphocytic leukemia. 

(b) Service connection will not be established under this section if the claimed condition is due to the veteran's own willful misconduct, or if there is affirmative evidence that establishes a nonservice-related supervening condition or event as the cause of the claimed condition. 

For claims involving exposure to mustard gas, the Veteran must prove evidence of in-service exposure, and a diagnosis of current disability, but is relieved of the burden of providing medical evidence of a nexus between the current disability and his in-service exposure. Rather, that nexus is presumed if the other conditions are met subject to the regulatory exceptions in 38 C.F.R. § 3.316 (b). 38 C.F.R. § 3.316; see also Pearlman v. West, 11 Vet. App. 443, 446 (1998). 

In this case, the Veteran contends that he was exposed to mustard gas and other gases when he was stationed at Fort Benning, Georgia and Fort Polk, Louisiana in service. He reports that he participated in face mask drills with live gases in 1967 and 1968 during which they occasionally removed the mask and he became exposed to those gases. However, although his service records indicate that he was stationed at Fort Benning and Fort Polk, the record does not show that the Veteran was exposed to mustard gas. Notably, in an email message, dated in March 2012, it was noted that the Department of Defense was unable to ascertain any exposure to chemical agents, including mustard gas, based on the information provided for the Veteran. As such, the Board concludes that the record does not establish that the Veteran was exposed to mustard gas in service. Based on the evidence currently of record, therefore, the Board finds that in-service exposure to mustard gas has not been established. . 

Considering the above, the Board finds that the Veteran did not experience full-body exposure to mustard gas/Lewisite and is not entitled to service connection for a respiratory condition on a presumptive basis pursuant to 38 C.F.R. § 3.316. 

Even if a Veteran is not entitled to presumptive service connection for a disease claimed as secondary to mustard gas exposure, VA must also consider the claim on a direct service-connection basis. When a disease is first diagnosed after service but not within the applicable presumptive period, service connection may nonetheless be established by evidence demonstrating that the disease was in fact incurred in service. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

In this regard, the Board notes that the service treatment records (STRs) are negative for any findings of a chronic lung disorder. While the STRs indicate that the Veteran was seen on several occasions for common cold symptoms and was diagnosed with an upper respiratory infection (URI) in February 1968, the separation examination in October 1968, was negative for any complaints or findings of a pulmonary disease; clinical evaluation of the lungs and chest was normal and a chest x-ray was reported to be negative. While the record reflects that the Veteran has been diagnosed with bronchitis and COPD, the earliest documentation of a lung disorder was in October 1988, approximately 20 years after separation from service. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000) (ruling that a prolonged period without medical complaint can be considered, along with other factors, as evidence of whether an injury or a disease was incurred in service which resulted in any chronic or persistent disability). 

In addition, the preponderance of the competent evidence of record shows that the Veteran's currently diagnosed lung disorder is not related to service. The majority of the medical opinions of record addressing the etiology of his respiratory conditions, including the August 2011 VA examination, and the July 2017 DBQ examination and medical opinion, are negative. Significantly, following a VA examination in August 2011, the examiner reported a diagnosis of COPD/chronic bronchitis. The examiner opined that it is not likely that the Veteran's current COPD\chronic bronchitis is related to conditions treated in service. The examiner observed that the STRs show one instance of what was termed a viral upper respiratory infection (URI) and another entry showing assessment as URI with the description of symptoms that fit an ordinary cold. More recently, following a DBQ examination in July 2017, a DBQ examiner noted that the Veteran has a 40-pack-year smoking history. He stated that, given the pattern on his pulmonary function testing and smoking history, the respiratory impairments are more likely than not due to the direct effects of the 40-pack-years of cigarette smoking. He noted that the Veteran was taking medication for COPD. 

The Board has considered the Veteran's assertions that he suffers from a respiratory condition related to military service, to include exposure to mustard gas. However, the Board finds his opinion is not competent evidence. The Veteran has provided no indication that he has expertise in determining the cause of bronchitis and/or COPD. He is thus a non-expert, or layperson. Although it is improper to categorically exclude layperson nexus opinion evidence, not all layperson nexus opinion evidence is competent evidence. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) ("whether lay evidence is competent and sufficient in a particular case is a fact issue to be addressed by the Board"); Davidson v. Nicholson, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (applying Jandreau specifically to lay nexus opinion evidence). As previously noted, it is not shown that the Veteran is otherwise qualified through specialized education, training or experience to offer a medical opinion as to the etiology of his bronchitis/COPD, and therefore his assertions that his current respiratory disorder is caused by exposure to gases in service is not competent evidence. 

Put simply, the evidence does not establish that the Veteran had a chronic respiratory disorder, namely bronchitis, during active service or within one year of separation from active service, or that his current respiratory disorder is otherwise related to active service. Accordingly, the Veteran's respiratory disorder, diagnosed as bronchitis and COPD, was not incurred in or caused by service, nor may it be presumed to have so been incurred. In summary, for the reasons stated above, the Board finds that the preponderance of the evidence is against the claim for service connection for a respiratory disorder, including bronchitis and COPD, and the benefit-of-the-doubt rule is not for application. 38 U.S.C. § 5107, Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

III. Factual background & Analysis-S/C bilateral eye disorder.

The Veteran essentially contends that his bilateral eye disorder developed as a result of military service. In a statement in support of claim, dated in November 2010, the Veteran maintained that he was diagnosed with a bilateral eye condition while on active duty and was prescribed glasses. 

The Board has reviewed the Veteran's VA treatment records and DBQ examinations since he filed his claim for service connection for bilateral eye disorders. The Board reflects that those records demonstrate diagnoses of cataracts with resulting pseudophakia and dry eye disease. The record also indicates that the Veteran has undergone repetitive testing for diabetic retinopathy and has consistently been found not to have diabetic retinopathy. 

The STRs reflect that during a routine eye examination in April 1967, visual acuity was 20/40 in the right eye and 20/50 in the left eye; glasses were prescribed to treat photophobia. The separation examination, performed in October 1968, is negative for any complaints or findings of an eye disorder. Visual acuity was reported 20/20 for distant and near vision. 

Post service treatment records dated from March 1988 through April 2015 show that the Veteran was diagnosed with dry eyes in May 2007. 

Although the record establishes that the Veteran currently suffers from eye disorders, and the Veteran was treated for photophobia in service, there is no evidence establishing a nexus between the two. Therefore, the third element of service connection has not been established. 

Significantly, during a DBQ examination in September 2015 the Veteran reported that he went into the service without glasses and ended up being discharged with glasses; he seemed to think something happened to him in service that caused him to need glasses. He further stated that he once got something in one eye that was treated in service. The examiner noted that the Veteran has diabetes and is screened at VANO and his last screening on July 9, 2012 showed no diabetic retinopathy. The examiner also noted that the Veteran's last clinic note was November 2, 2011 and it indicated that he was a glaucoma suspect based on C/D ratio (0.5, 0.6). The examiner indicated that the Veteran had no diabetic retinopathy at this examination. In fact, he had a normal eye exam. He has good corrected visual acuity. Subsequently, the examiner opined that the condition claimed is less likely than not proximately due to or the result of the Veteran's service-connected condition. The examiner explained that the rationale for his opinion was that the Veteran does not have a bilateral eye disorder. 

On the occasion of a more recent DBQ eye examination in July 2017, it was noted that the Veteran had cataract surgery in both eyes within the past month by a Non VA provider; he stated that he was doing well and had no ocular or visual complaints. The Veteran also stated that he is diabetic and is stable. Following an examination, the examiner reported a diagnosis of pseudophakia. The examiner indicated that Veteran recently had surgery for age related cataracts. The examiner further noted that the Veteran is diabetic and shows no signs of diabetic retinopathy at this examination. The examiner related that the Veteran has no diabetes related eye conditions nor any eye conditions related to his time in service. 

The Veteran has alleged that his current bilateral eye disorders had their onset during his period of service and was caused by something getting into his eyes. While lay persons are competent to provide opinions on some medical matters, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the etiology of an eye disorder is a complex medical matter that falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). As such, the Veteran's statements regarding a nexus between his eye disorders and military service are outweighed by the other evidence of record. 

In conclusion, the Board finds that direct service connection for bilateral eye disorders is not warranted. The medical evidence is against the relationship between the Veteran's current eye disorders and service. Additionally, the VA examiner provided a thorough and well-reasoned negative medical nexus opinion. It has consistently noted that the Veteran does not have any signs of diabetic retinopathy. Given the Board's findings regarding the competency and credibility of the lay evidence above, the Board considers the reliance on medical evidence appropriate. As such, the Board gives these opinions considerable weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). 

Accordingly, the Board finds that the preponderance of the evidence is against the claim and entitlement to service connection for bilateral eye disorders is denied. 38 U.S.C. § 5107 (b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 


ORDER

Service connection for a respiratory condition, diagnosed as COPD and bronchitis, is denied. 

Service connection for bilateral eye disorders is denied. 



____________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs