﻿Citation Nr: 18106793
Decision Date: 05/31/18 Archive Date: 05/31/18

DOCKET NO. 13-24 818
DATE: May 31, 2018
ORDER
Entitlement to service connection for residuals of a stroke is denied.
REMANDED
Entitlement to service connection for a cervical spine disorder is remanded.
Entitlement to service connection for a right arm disorder, to include as secondary to claimed cervical spine disorder, is remanded.
Entitlement to service connection for a traumatic brain injury (TBI) is remanded.
Entitlement to service connection for headaches, to include as secondary to claimed TBI, is remanded.
Entitlement to service connection for cognitive impairment/memory loss, to include a secondary to claimed TBI, is remanded.
 
FINDING OF FACT
The Veteran’s stroke occurred many years after discharge from military service and is not related to his military service. 
CONCLUSION OF LAW
The criteria for service connection for residuals of a stroke have not been met. 38 U.S.C. §§ 1110, 1131, 1154, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran had active duty service from October 1974 to October 1976, September 1977 to February 1981, and from January to September 1982. This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a March 2010 rating decision by the Agency of Original Jurisdiction (AOJ). 
The Veteran requested a hearing before a Decision Review Officer (DRO) in October 2010 and July 2014 correspondences, although he withdrew both of those requests in an October 2017 correspondence. 
Also, in his August 2013 substantive appeal, VA Form 9, the Veteran requested a hearing before a Veterans Law Judge; he was subsequently scheduled for that hearing in November 2017. However, the Veteran failed to appear for his scheduled Board hearing and has not requested to reschedule that hearing, nor has he provided any good cause for failing to appear for his scheduled hearing as of this decision. The Board will proceed with adjudication at this time as if the Veteran has withdrawn his request for a Board hearing. See 38 C.F.R. § 20.704(d).
As a final initial matter, the Veteran also initially claimed a total disability rating based on individual unemployability (TDIU) in connection with the above noted claims, although when the AOJ denied that issue in the March 2010 rating decision, the Veteran did not submit a timely notice of disagreement as to that issue. See 38 C.F.R. §§ 20.200, 20.201.
Subsequently, the Veteran submitted another TDIU claim in October 2011, which the AOJ denied in a July 2013 rating decision; the Veteran timely appealed the TDIU issue with a June 2014 notice of disagreement. The AOJ issued a February 2015 statement of the case as to the TDIU issue; the Veteran did not timely submit a substantive appeal, VA Form 9, in connection with that February 2015 statement of the case. Consequently, the TDIU claim has not been certified to the Board as an issue on appeal at this time, and it is considered final. See 38 C.F.R. §§ 20.200, 20.202, 20.1103.
Therefore, even though the AOJ included the TDIU issue in the most recent October 2017 supplemental statement of the case, the Board does not properly have jurisdiction over the TDIU issue and it will no longer be addressed in this decision. See Id.
Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). “To establish a right to compensation for a present disability, a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service”—the so-called “nexus” requirement.” Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).
Certain chronic diseases, including brain hemorrhage and brain thrombosis, may be presumed to have been incurred in or aggravated by service if manifest to a compensable degree within one year of discharge from service, even though there is no evidence of such disease during service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309(a). 
On appeal, in his July 2009 claim, the Veteran asserts that he had a stroke and that he was no longer able to work. The Veteran, however, has not submitted any statements regarding how he believes that his stroke is related to his military service. 
Private, Social Security Administration (SSA), and VA treatment records associated with the claims file document that the Veteran sought treatment for a stroke in June 2009, many years after his discharge from service. See Maxson v. West, 12 Vet. App. 453 (1999), aff'd, 230 F.3d 1330 (Fed. Cir. 2000) (a significant lapse in time between service and post-service medical treatment may be considered as part of the analysis of a service connection claim, which weighs against the claim). However, after CT and Magnetic Resonating Imaging (MRI) scans, those records did not disclose evidence of a stroke. Moreover, none of those records indicate any associated etiology of the Veteran’s stroke with his period of military service. 
The Board has also reviewed the Veteran’s service treatment records; those records do not demonstrate that the Veteran had any stroke, brain hemorrhage, or brain thrombosis during military service. 
The Board acknowledges the Veteran’s statements and complaints in the evidence of record that he had a stroke, although he is not competent to diagnosis such a disorder. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis); see also Jones v. West, 12 Vet. App. 383, 385 (1999) (where the determinative issue is one of medical causation or a diagnosis, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue). 
Consequently, the medical evidence of record does not appear to indicate that what the Veteran experienced in June 2009 was actually a stroke; thus, it appears to the Board that the first element of service connection—a current disability—may not actually be met in this case. See Brammer v. Derwinski, 3 Vet. App. 223 (1995) (Congress specifically limited entitlement for service-connected disease or injury to cases where such incidents had resulted in a disability)
Nevertheless, insofar as the Veteran claims that any residuals of that June 2009 event constitute a functional impairment of his earning capacity—and therefore is a “current disability” in this case, see Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018)—the Board cannot find that there is any in-service injury or event, nor any evidence of a nexus in this case. 
As noted above, the Veteran did not have any evidence of a stroke, brain hemorrhage, or brain thrombosis during his period of military service; likewise, the Veteran’s experienced symptomatology that he related as a stroke in June 2009—and any residuals present subsequent to that event—occurred many years after his discharge from service. Finally, the Veteran has not provided any evidence or otherwise indicated what event or injury during military service could have plausibly caused the June 2009 event. 
The Board therefore cannot find that even if the evidence of record at this time supported the presence of a current disability as to the Veteran’s claimed stroke residuals, the evidence of record respecting elements 2 and 3—an in-service event or injury and a nexus—does not compel an award of benefits in this case. The Board therefore must deny service connection for residuals of a stroke at this time based on the evidence of record. See 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 
In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claims, that doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107(b) (2012); 38 C.F.R. § 3.102.
REASONS FOR REMAND
On appeal, the Veteran has indicated that he broke his right arm during military service and that during the fall in which he sustained that broken arm, he injured his cervical spine and sustained a TBI. A review of the Veteran’s service treatment records, however, demonstrates that in May 1980 he fractured his left arm, not his right arm. 
Regardless, the Veteran is shown to have fallen and broken his arm during military service. Moreover, the Veteran submitted a May 2011 letter from his VA physician, Dr. C.D.J., which indicated that it was “possible” the Veteran’s cervical spine disorder started at the time of the fall during service where he broke his arm. Finally, the Veteran is shown to have been hit in the face with a basketball in May 1976, with treatment for headaches thereafter. 
The evidence therefore meets the low threshold for obtaining a VA examination in this case with respect to the Veteran’s claimed cervical spine and TBI disorders. As no VA examination has been afforded to him with respect to his claimed cervical spine and TBI disorders, the Board finds that a remand is necessary at this time in order for such to be accomplished. See 38 U.S.C. § 5103A(d); McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006).
Furthermore, even though the evidence of record documents that the Veteran fractured his left arm and not his right arm in service, Dr. C.D.J. indicated that the Veteran’s current right arm problems, including pain and neuropathy, are related to complications stemming from a June 2004 surgical procedure respecting his cervical spine. Likewise, headaches and cognitive impairment/memory loss are known complications of a TBI. Accordingly, the Board must also remand the right arm, headaches, and cognitive impairment/memory loss issues as those issues are intertwined with the above remanded cervical spine and TBI issues. See Henderson v. West, 12 Vet. App. 11, 20 (1998); Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).
Finally, on remand, any outstanding VA treatment records should also be obtained. See 38 U.S.C. § 5103A(b), (c); 38 C.F.R. § 3.159(b); see also Sullivan v. McDonald, 815 F.3d 786 (Fed. Cir. 2016) (where the Veteran “sufficiently identifies” other VA medical records that he or she desires to be obtained, VA must also seek those records even if they do not appear potentially relevant based upon the available information); Bell v. Derwinski, 2 Vet. App. 611 (1992).
The matters are REMANDED for the following action:
1. Obtain any and all VA treatment records not already associated with the claims file from the Houston VA Medical Center, or any other VA medical facility that may have treated the Veteran and associate those documents with the claims file.
2. Ensure that the Veteran is scheduled for a VA examination with an appropriate examiner in order to determine whether the Veteran’s cervical spine and right arm disorders are related to his military service. The claims folder must be made available to and be reviewed by the examiner. All tests deemed necessary should be conducted and the results reported in detail. 
Following examination of the Veteran and review of the claims file, the examiner must specifically state any cervical spine and right arm disorders found, to include any arthritic conditions thereof. 
Then, the examiner must opine whether it is at least as likely as not (50 percent or greater probability) that any current cervical spine and right arm disorders began in or are otherwise etiologically related to his period of active service, to include being hit in the face playing basketball in May 1976 and the fall and fracture of his left arm in May 1980. In addressing this, the examiner should specifically address Dr. C.D.J.’s May 2011 letter. 
The examiner must consider the Veteran’s lay statements regarding onset of symptomatology and any continuity of symptomatology since onset and/or since discharge from service. The examiner should also consider any other pertinent evidence of record, as appropriate. All findings should be reported in detail and all opinions must be accompanied by a clear rationale.
3. Ensure that the Veteran is scheduled for a VA examination with an appropriate TBI specialist in order to determine whether the Veteran’s claimed TBI, cognitive impairment/memory loss, and headache disorders are related to his military service. The claims folder must be made available to and be reviewed by the examiner. All tests deemed necessary should be conducted and the results reported in detail. 
Following examination of the Veteran and review of the claims file, the examiner must specifically state whether the Veteran has any residuals of a TBI. In so discussing, the examiner should also address whether his claimed headaches and cognitive impairment/memory loss are separate and distinct disorders or whether such are physical complications of a TBI. 
Then, the examiner must opine whether it is at least as likely as not (50 percent or greater probability) that any current separate and distinct disorders found, to include TBI, cognitive impairment/ memory loss, and headache disorders, began in or are otherwise etiologically related to his period of active service, to include being hit in the face playing basketball in May 1976 and the fall and fracture of his left arm in May 1980. 
The examiner must consider the Veteran’s lay statements regarding onset of symptomatology and any continuity of symptomatology since onset and/or since discharge from service. The examiner should also consider any other pertinent evidence of record, as appropriate. All findings should be reported in detail and all opinions must be accompanied by a clear rationale.

 
JAMES G. REINHART
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD M. Peters, Counsel